Stephen Smith Esq.; Idaho Bar No.7336
Holmes Weddle & Barcott, P.C.
702 W. Idaho Street, Ste. 1100
Boise, Idaho 83702
Email: ssmith@hwb-law.com
Telephone 208.863.9000
Fax 206.340.0289

Attorneys for Plaintiff Bonnie Layton

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BONNIE LAYTON, an individual, and EQUITY TRUST COMPANY CUSTODIAN FBO BONNIE LOUISE HARPER IRA. | Case No. _____ |
| Plaintiffs, | COMPLAINT |
| v. | |
| WME IMG, LLC a foreign corporation; ENDEAVOR LLC, a foreign corporation; and ENDEAVOR HOLDINGS LLC, a foreign corporation, | |
| Defendants. | |

COME NOW Plaintiffs, by and through their attorneys Holmes, Weddle & Barcott PC, and complains as follows:

## I. **JURISDICTION AND VENUE**

1.1     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Venue is appropriate in the District of Idaho pursuant to 28 U.S.C. §1391.

## II. **PARTIES**

2.1     Plaintiff Bonnie Layton is an individual residing in Boise, Ada County, Idaho.

2.2     Plaintiff Equity Trust Company Custodian FBO Bonnie Louise Harper IRA ("Harper IRA") is a self-directed IRA. Plaintiff Bonnie Layton is the sole owner of Harper IRA.

2.3     On information and belief, Defendant WME IMG LLC ("WME IMG") is a Delaware company with its principal place of business in California. It operates as a sports, media, and entertainment agency. WME IMG is a massive company that has resulted from over one hundred years of corporate formations, mergers, and acquisitions.

2.4     On information and belief, in 2017 or 2018, a holding company was formed in order to rename and restructure WME IMG. On information and belief, the name of that holding company is Endeavor LLC or Endeavor Holdings LLC (collectively and alternatively "Endeavor"), and such company is a foreign company, with its principal place of business in California. On information and belief, all WME IMG companies, including their subsidiaries, are currently held under this new entity.

### III.  FACTS

3.1     Layton first met with representatives of Defendants in Idaho in the summer of 2014. The representatives identified themselves as employees of a business named WCMC LLC. They were scouting locations for a country music festival in Idaho.

3.2     On information and belief, WCMC is under the direction and control of Defendants.

3.3     At that time, Layton was an economic development director for Elmore County, Idaho. In that role, Layton scouted locations, set up meetings with landowners, and guided WCMC and Defendants through the process of obtaining necessary permitting for the country music festival.

3.4     The first country music festival in Idaho was held in July 2015, with headliners Brad Paisley, Blake Shelton, and Florida Georgia Line.

3.5     Between January and December 2016, Plaintiffs were approached by representatives of WCMC and Defendants for four short-term loans of varying amounts. Two of these were repaid; two were not.

3.6     The first promissory note ("First Note"), dated January 12, 2016, was executed in the amount of Forty Thousand Dollars ($40,000.00). Layton was the sole note holder, WCMC LLC and Anne Hankins were identified as the makers. Layton was told by representatives of Defendants that the money would be used to pay deposits of the artists for the 2016 festival year. After repayment extensions were given, the First Note was finally repaid in full in May 2016.

3.7     A second promissory note ("Second Note"), dated January 20, 2016, was executed in the amount of One Hundred Fifty Thousand Dollars ($150,000.00). Layton was 86% holder of the note ($126,000.00); Harper IRA was 14% holder of the note ($24,000.00). WCMC and Anne Hankins were identified as the makers. Plaintiffs were told by representatives of WCMC that the money would be used for deposits for the artists for the 2016 festival year. The Second Note provided for interest of twelve percent per annum (12%) during term of repayment, and an additional fee of 15% in the event that payment was not made in full by the maturity date. The maturity date was April 19, 2016. The Second Note also provides that, in the event legal assistance is necessary to enforce the terms, Plaintiffs are entitled to recover attorneys' fees and costs. A copy of the Second Note is attached hereto as Exhibit A.

3.8     Plaintiffs provided the borrowed funds to WCMC and Defendants as follows:

| January 20, 2016 | $75,000 | Layton |
| January 26, 2016 | $51,000 | Layton |
| February 8, 2016 | $24,000 | Harper IRA |

3.9     Three extensions for repayment of the Second Note were executed. The last extension for repayment of the Second Note was executed on February 26, 2018, extending the maturity date to August 31, 2018. A copy of the extension agreement is attached hereto as Exhibit B. At the time the final extension was negotiated, Plaintiffs advised WCMC that no more extensions would be granted.

3.10     Monthly interest payments for the Second Note were periodically made. Interest has been paid on the Second Note through approximately July 2018. As of the filing of this complaint, the entire principle amount remains unpaid and interest remains due and owing from

3

COMPLAINT                                                                  CASE NO._____

July 2018, and continues to accrue. Under the terms of the Note, a fee is also owed due to non-payment.

3.11    A third promissory note ("Third Note"), dated August 17, 2016, was executed in the amount of Fifty Thousand Dollars ($50,000.00). On December 9, 2016, Note Three was converted into a promissory note in the amount of Two Hundred Sixty Two Thousand Dollars ($262,000.00).  Layton was told by representatives of WCMC that the money would be used for festival expenses that were outstanding from the 2016 festival season. After repayment extensions were given, the Third Note was finally repaid in full in April 2018.

3.12    A fourth promissory note ("Fourth Note"), dated December 1, 2016, was executed in the amount of Forty Thousand Dollars ($40,000.00). Harper IRA was the sole note holder; WCMC and Anne Hankins were identified as the makers. The Fourth Note provided for interest of twelve percent per annum (12%) during term of repayment, and an additional fee of 15% in the event that payment was not made in full by the maturity date. The maturity date was March 31, 2017. The Second Note also provides that, in the event legal assistance is necessary to enforce the terms, Plaintiffs are entitled to recover attorneys' fees and costs. A copy of the Fourth Note is attached hereto as Exhibit C

3.13    Harper IRA provided the funds under the Fourth Note to WCMC on December 1, 2016.

3.14    Several extensions for repayment of the Fourth Note were granted, some verbally and some written. The final extension (either verbal or written) for repayment of the Fourth Note was executed on February 26, 2018, extending the maturity date to August 31, 2018. A copy of the extension agreement is attached hereto as Exhibit D. At the time the final extension was negotiated, Plaintiffs advised WCMC that no more extensions would be granted.

3.15    Monthly interest payments for the fourth note were originally required to be made monthly. Subsequently, the terms of the interest payments were modified to allow a balloon payment of accumulated interest and principle at the end of the loan term. As of the filing of this complaint, the all principle and interest remain unpaid and interest continues to accrue. Under the terms of the Note, a fee is also owed due to non-payment.

3.16    On August 27, 2018, Plaintiffs emailed WCMC a summary of all amounts due on August 31, 2018. No response was received.

3.17    On August 30, 2018, the August 27 email was resent. WCMC requested another extension, which was denied.

3.18    On August 31, 2018, WCMC advised that they had overnighted $72,400.00 to Harper IRA. WCMC alleged that that amount would satisfy all that was owed to Harper IRA.

3.19    Later the same day, WCMC advised that they had also deposited $127,715.67 into Layton's bank account, which would allegedly satisfy the remaining amounts due. This information was delivered via a text message with a picture of the deposit slip and a message stating "Done."

3.20    On September 5, 2018, Plaintiffs were notified that the check for $127,715.67 had been returned for Non-Sufficient Funds ("NSF"). Plaintiffs contacted WCMC and Plaintiffs were advised that the payment of $72,400.00 to Harper IRA would also be returned NSF.

3.21    The payment of $72,400.00 to Harper IRA was, in fact, returned NSF.

3.22    Between September 6 and 14, 2018, a series of communications occurred between Plaintiffs and WCMC during which WCMC admitted knowing in advance that the two payments would be returned NSF.

3.23    On September 14, 2018, a cash deposit of $2,760.00 was made into Layton's account to pay for some of the outstanding interest that was due.

3.24    Letters were sent to WCMC September 17 and 27, 2018, demanding payment in full of the Second Note and Note Four. No payment has been received since that time.

3.25    On information and belief, Defendants directly or indirectly control the business activities of WCMC, such that WCMC is merely an "alter ego" of Defendants. Examples include, but are not limited to:

    a.    Defendants are included in emails discussing business dealings of WCMC, and exercise authority over WCMC's business dealings;

    b.    Defendants are identified as partners of WCMC on 2015 tax documents;

  c. Defendants issue press releases, statements and otherwise speak out on behalf of WCMC;

  d. In a 2018 annual report, WCMC identified Defendants' co-CEO Patrick Whitesell as a manager of WCMC;

  e. In a 2018 annual report, WCMC identified Defendants' chief financial officer and/or chief operating officer Jason Lublin as manager of WCMC;

  f. Defendants organized, coordinated, directed, and financed a business meeting during which the business dealings of WCMC and other of Defendants' companies were discussed, and during which Defendants gave direction to WCMC; and,

  g. The actions of WCMC and Defendants are indecipherable.

 3.26 On information and belief, Defendants also directly or indirectly controlled the country music festivals giving rise to the subject matter of this lawsuit. Specifically:

  a. Defendants directed details of the country music festival, including driving record checks;

  b. On information and belief, checks have been issued to law enforcement agencies, vendors, and artists from a single bank account that is utilized by both WCMC and Defendants;

  c. In carrying out the country musical festival, WCMC utilized forms prepared by IMG Worldwide, LLC and Williams Morris Endeavor Entertainment, LLC. On information and belief, these two companies are now part of the Endeavor umbrella company;

  d. On information and belief, Defendants accepted and benefitted from funds provided under all four Notes with Plaintiffs; and,

  e. Defendants manifested assent to the Second and Fourth Notes, including communicating with Plaintiffs about potential repayment of the outstanding Notes.

6

COMPLAINT  CASE NO._____

3.27    The actions of WCMC and Defendants are not separable and distinct. Rather, they are the actions of one company. WCMC is merely an "alter ego" of Defendants.

### IV.  FIRST CAUSE OF ACTION – BREACH OF SECOND NOTE

4.1    Plaintiffs reassert all preceding paragraphs as if fully set forth herein.

4.2    The Second Note, as modified by the extension, is a valid and enforceable contract between WCMC and Plaintiffs.

4.3    WCMC was acting as an "alter ego" of Defendants when it executed the Second Note.

4.4    Defendants ratified the Second Note through its actions.

4.5    Plaintiffs performed all obligations under the Second Note.

4.6    Under the terms of the Second Note and the extension, Defendants were obligated to pay Plaintiffs all amounts owing thereunder, including principle and interest, no later than August 31, 2018.

4.7    By failing to pay Plaintiffs all remaining outstanding amounts owed under the Second Note, Defendants materially breached the Second Note.

4.8    In every contract, including the Second Note, there is implied a covenant of good faith and fair dealing.

4.9    By intentionally sending payments that Defendants knew would be rejected as NSF, Defendants materially breached the Second Note.

4.10    As a direct and proximate cause of Defendants' breaches of its obligations under the Second Note, Layton has and will continue to suffer financial damages, including but not limited to, financial loss of $126,000.00 plus interest and fees, consequential damages, and legal fees and costs reasonably incurred or caused by Defendants' breach of its obligations under the Second Note.

4.11    As a direct and proximate cause of Defendants' breaches of its obligations under the Second Note, Harper IRA has and will continue to suffer financial damages, including but not limited to, financial loss of $24,000.00 plus interest and fees, consequential damages, and

legal fees and costs reasonably incurred or caused by Defendants' breach of its obligations under the Second Note.

## V. SECOND CAUSE OF ACTION – BREACH OF FOURTH NOTE

5.1   Harper IRA reasserts all preceding paragraphs as if fully set forth herein.

5.2   The Fourth Note, as modified by the extension, is a valid and enforceable contract between WCMC and Plaintiffs.

5.3   WCMC was acting as an "alter ego" of Defendants when it executed the Fourth Note.

5.4   Defendants ratified the Fourth Note through its actions.

5.5   Plaintiff Harper IRA performed all obligations under the Fourth Note.

5.6   Under the terms of the Fourth Note and the extension, Defendants were obligated to pay Harper IRA all amounts owing thereunder, including principle and interest, no later than August 31, 2018.

5.7   By failing to pay Harper IRA all remaining outstanding amounts owed under the Fourth Note, Defendants materially breached the Fourth Note.

5.8   In every contract, including the Fourth Note, there is implied a covenant of good faith and fair dealing.

5.9   By intentionally sending payment that Defendants knew would be rejected as NSF, Defendants materially breached the Fourth Note.

5.10   As a direct and proximate cause of Defendants' breaches of its obligations under the Second Note, Plaintiffs have and will continue to suffer financial damages, including but not limited to, financial loss of $40,000.00 plus interest and fees, consequential damages, and legal fees and costs reasonably incurred or caused by Defendants' breach of its obligations under the Fourth Note.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

7.1   Judgment against Defendants in favor of Layton for $126,000.00, plus interest and fees;

7.2 Judgment against Defendants in favor of Harper IRA for $64,000.00, plus interest and fees;

7.3 For an award of Plaintiffs' reasonable attorneys' fees and costs incurred in this action; and

7.4 For such other and further relief as the court deems appropriate.

DATED: December 12, 2018

HOLMES WEDDLE & BARCOTT, P.C.

By: __/s/ Stephen C. Smith_____
 Stephen C. Smith, Idaho Bar No. 7336
 Attorneys for Plaintiffs Layton and Harper IRA

B:\7080 - Layton, Bonnie\31247 (Debts Owed)\Pleading\Drafts\Complaint 12.11.18 1013AM.doc